By the Court.
The plaintiff in error was indicted by the grand jury of Van Wert county for the murder of his wife, Helen Hoover. On the trial in the court of common pleas of Van Wert in April, 1913, by the verdict of a jury the. plaintiff in error was found guilty of murder in the second degree. From the judgment entered on this verdict error was prosecuted to the court of appeals of Van Wert and the judgment was by that court affirmed. Error is prosecuted here to reverse the judgment below.
The deceased died from the effects of wounds inflicted by bullets fired from a revolver into her head a number of days before she died. The tragedy occurred at her home in the country, where she lived with her husband.
There was no direct testimony in the case as to who fired the shots.
The defendant below and his wife were a young couple, who had been schoolmates and close associates for a long time prior to their marriage.
In April, 1912, the father of decedent called on the defendant, and in the presence of his father accused him. of having disgraced his daughter. The result of the conference then held was that the parties were married on the following day and went to live with defendant’s father.
At the time of the marriage he was about 18 years old and she was a year younger. They remained at his father’s about three months when, at the request of his parents, she went to live at her parents’ home, he remaining with his parents. In the following October they went to live in their *43 own home on his father’s farm. They lived together there until the tragedy, which occurred about nine months after their marriage.
The defendant in his testimony gave an account of his movements and whereabouts on the day of the shooting. He stated that he was engaged in work on the farm; that he took dinner at his father’s house; that he was in and out of his own house during the day; that he was there about two o’clock in the afternoon and had a short talk with his wife, who was complaining of a headache; that he then went to his father’s barn; about one-half mile away, with a team to haul fodder; that about half-past four he went back home; that when he arrived he found his wife lying on the floor in the sitting room with the bullet wounds in her head; that he telephoned to his mother, told her “there has been a man in here some time this afternoon and shot Helen” and asked her to come quick; that the reason he said there had been a man there and shot his wife was because she had told him so. He denied that there had been any trouble between him and his wife between their marriage and her death, and stated that they had never had a fuss. He testified that the mother of his wife arrived at the house in the afternoon of the following day and that her treatment of him was not friendly.
The plaintiff in error urges that the evidence against him was all circumstantial and more consistent with the theory of suicide than of murder, and that there was prejudicial error in the admission of testimony. As to the latter, it is insisted in the first place that the court erred in admitting *44 the testimony of certain physicians in rebuttal. The state, in order to maintain its case in chief, had offered the testimony of experts, several physicians, to show that either one of the two principal wounds, which they discovered had been inflicted upon the deceased, would have caused immediate unconsciousness. The defendant called his mother as a witness, who testified that she had found the decedent soon after she had been called to the home, lying on the floor; had gotten down on the floor and put her hand over her head; had washed her face and bathed her head and asked her if a man had come into the house and shot her. She testified that the deceased shook her head “yes,” and in answer to the question whether she knew the man she shook her head “no.” The mother testified to other acts of consciousness of the deceased at that interview of a similar character. Two physicians were called on behalf of the defendant who testified that they saw the deceased about five o’clock in the afternoon. They gave it as their opinion that the deceased might have spoken within an hour preceding that time, and these physicians testified that neither of the wounds would necessarily have caused immediate unconsciousness.
The state in rebuttal was permitted, over the objection of the defendant, to offer evidence that these wounds would have caused immediate unconsciousness, and one of the witnesses so testifying was a physician who had already testified to the same effect in chief. We think that the admission of this evidence in rebuttal was proper. The evi *45 dence offered in chief was competent as showing the nature arid extent of the wounds that the deceased had received, the effect that they necessarily had upon her and that they naturally resulted in her death. This testimony contributed to the treking out of the case which the state was compelled to establish in chief. The testimony of the physicians, which was received in rebuttal, although substantially to the same effect, was competent in support of the effort to contradict the testimony of the mother of the defendant. Even if it be said that it was merely cumulative, its admission in rebuttal cannot be said to be an abuse of the discretion of the court in view of the testimony of the mother with reference to the consciousness of the deceased at the time stated.
It is also insisted that the trial court erred in admitting evidence of an impeaching nature with reference to the testimony of the attending physician. This witness described his visit to and examination of the deceased. He had fully detailed the entire situation as he found it, the location, nature and extent of the wounds, the treatment of them and the progress of the case till the death of Mrs. Hoover. He was asked as to the probability of the wounds having been self-inflicted and answered “it is very possible they could be.” He was asked on cross-examination, among other questions seeking to impeach his testimony, if he had not on another occasion, to a third person, made statements that were inconsistent with the answer referred to. The physician having denied that he remembered making any such statement, the state was permitted *46 in rebuttal, over the objection of defendant, to offer testimony showing that the physician had made the statements referred to.
The testimony of an expert witness, in which he gives an opinion, concerning a state of facts given in a hypothetical question, cannot be impeached by testimony that he had at another time expressed an opinion as to the actual transaction which was different from his expert opinion on the state of facts as contained in the question. A witness might have an opinion definite and conclusive with reference to a state of facts given in a question, and yet at the same time he might have received impressions which were caused by wholly extraneous circumstances or by hearsay and unreliable report which would lead him to hold and express a different belief as to the real state of facts. It would be unsafe and wholly improper to admit testimony concerning statements of that belief made at other times. On the other hand, it would be perfectly proper, where an expert had given on the witness stand an opinion concerning a state of facts contained in a hypothetical question, to show by way of impeachment that at other times he had given another opinion concerning the same state of facts. In this case the witness was the attending physician, constantly seeing the patient from time to time, and the question put to him by the defendant’s counsel called for his opinion based upon his personal knowledge gathered from his frequent examinations of the deceased. It was, therefore, proper for the state to show that the witness had made contradictory statements at other times as to what his *47 opinion was concerning the same state of facts, knowledge of which he had acquired in the manner stated. It was for the jury to determine what weight was to be given to the testimony concerning the contradictory statement, and whether it was sufficient to shake their belief in the testimony given by the physician in chief. It is urged also that the court erred in the admission of the testimony of certain witnesses, one of whom was the nurse of the deceased, to the effect that in answer to certain questions by her mother while the defendant was standing by the bedside she had as- . sented to an accusation by the mother that he had done the shooting. It is urged that the defendant did not understand that he was being charged with having shot his wife, but that his mother-in-law was trying to get his wife to so charge him; that immediately after the talk the defendant, in another room, denied the charge, and by what he said and did showed that he did not think that his wife had charged him, but did think that his mother-in-law was trying to get her to so charge him; and that under the circumstances he was not called upon, and it would have been unseemly for him, to have taken issue with anything his wife said or did or to have become involved in a controversy with his mother-in-law. These suggestions were very proper to be urged upon the jury with reference to the weight that was to be given to the testimony concerning the transaction by the bedside, but they do not affect its competency.
The court in its charge to the jury carefully preserved the rights of the defendant and cautioned *48 them not to give undue weight to the situation disclosed. At the request of counsel for the defendant the court instructed the jury, before argument, as follows: “Testimony has been admitted in the trial of this case tending to show that on Saturday evening, January 11, 1913, a conversation between Mrs. Drake and her daughter, Helen Hoover, the deceased, was had in the presence and hearing of the defendant, Ralph Hoover, and that defendant was silent and left the room without speaking. You are instructed that such silence is not a confession by the defendant of the commission of the crime charged in the indictment in this case, or of any crime, and that in themselves that conversation and defendant’s silence are not sufficient to authorize a conviction of the defendant in this case. That evidence was admitted only for the purpose of allowing you to consider his conduct at that time and place, as tending, in connection with evidence of other facts, to prove the defendant guilty of the charge made against him by the indictment or included within its terms, and it is your duty to consider it for no other purpose whatever.”
In the general charge the court said to the jury: “Such evidence should be received and considered with care and caution, and with proper consideration of all circumstances and conditions that would be likely to influence the action of the defendant with a view to determining the motive that induced his silence, if you find he was silent. If it be doubtful whether the statements were perfectly heard or understood, by the defendant, or circumstances existed which might prevent a reply, or render it *49 improper or inexpedient to reply, or if his silence may be attributable to any motive other than acquiescence in the truth of the statement to which his silent assent is claimed, the evidence would then be entitled to no weight or consideration for any purpose. It is your duty to follow the instruction of the court as to the purpose for which such evidence may be-considered, and it is your province to determine the weight to be given such evidence for the purpose stated.” The views we have expressed on the questions stated are fully sustained by the authorities cited in the briefs of counsel. There are other assignments, all of which we have carefully considered, but we have found no prejudicial error in the record.
As already stated, it is urged by the plaintiff in error that the evidence was all circumstantial and more consistent with the theory of suicide than murder. This view of the case was urged upon us with great earnestness and with reasoning that was persuasive. There was a great amount of testimony in the case, covering every phase of the unfortunate matter, to sustain the views of the different parties. Like most cases which rest upon circumstantial evidence, much is said in argument on both sides. This court does not consider the evidence in cases for the purpose of determining where the preponderance is, and there could be no better example of the propriety of the rule than is furnished by this case. The jury and the trial court saw the witnesses and heard their testimony. They had an opportunity to form an opinion and *50 arrive at a conclusion as to the truth of the matter, which was far superior to the opportunity we have.
The court of appeals, in the performance of its duty to weigh the evidence, has affirmed the action of the triers below in that respect as in all others.
The judgment will be affirmed.

Judgment affirmed.

Nichols, C. J., Shauck, Johnson, Wanamaker, Newman and Wilkin, JJ., concur.